UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VANESSA WEISS,

                Plaintiff,

-v-

PREMIER TECHNOLOGIES and AT&T CORPORATION,

                Defendants.

21-CV-4648 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

In this employment discrimination action, Plaintiff Vanessa Weiss alleges that Defendants Premier Technologies ("Premier") and AT&T Corporation ("AT&T") discriminated against her on the basis of gender and sexual orientation. (Dkt. No. 16.) Before the Court is Defendants' motion to transfer this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendants' motion is granted and this action is transferred to the Western District of New York.

**I.    Background**

    **A.    Factual Allegations**[1]

In July 2019, Premier hired Weiss, a transgender woman, to work as a sales representative in its stores in Victoria and Batavia, New York. (*See* Compl. ¶ 25.) Soon after, Weiss began working at the Batavia store under Courtney Sturdy, who was responsible for training and supervising her. (*See* Compl. ¶¶ 25-26.)

---

[1] The following facts, drawn from the Amended Complaint (Dkt. No. 16 ("Compl.")), are presumed true for the purposes of this Opinion and Order.

1

The complaint alleges that Sturdy "immediately" subjected Weiss to discomfiting behavior. (Compl. ¶ 28.) Not only did he "at no point" train her, but he "did not voluntarily talk to her" and "utterly ignored her unless he was glaring at her as if she was bizarre." (Compl. ¶¶ 28-29.) He also excluded Weiss from meetings about new promotions and products—meetings that were important to Weiss's job and to which the male employees of the store were invited. (*See* Compl. ¶ 37-39.) When Weiss reported this exclusion to Human Resources, explaining that she believed that she was experiencing transgender discrimination, HR insisted on discussing the incident over private, instead of company, channels. (*See* Compl. ¶ 42, 45.) The HR associate apologized and promised to speak to Sturdy. (*See* Compl. ¶ 46.) Weiss requested a transfer to another store, which she did not receive. (Compl. ¶ 47.)

Sturdy's behavior did not change. When instructed to train Weiss on community outreach, Sturdy reacted "with a derisive look," and while training Weiss one-on-one, noted that someone had complained about his behavior. (Compl. ¶ 54.) Weiss believed that Sturdy knew she reported him and was "enraged." *Id.*

In September, both Weiss and Sturdy moved to a new Premier store in Victor, New York. (Compl. ¶¶ 5-59.) There, Sturdy allegedly "belittled" and insulted Weiss, "disparaged her in front of customers," interrupted her sales, interfered with her commissions and schedule, and refused her the right to sell a certain type of account ("First Net" accounts) despite her completion of the requisite training. (Comp. ¶¶ 61, 66, 72, 76, 85, 92.) Weiss appealed to Premier again, asking the Regional Manager for a transfer, which she again did not receive. (*See* Compl. ¶¶ 80-81.)

In December 2019, Premier terminated Weiss's employment.  (*See* Compl. 97.)  After firing Weiss, Premier's representative allegedly suggested to Weiss that she should focus on a career in "hair and makeup" instead of tech sales.  (Compl. ¶ 96-97.)

**B.**     **Procedural History**

Weiss filed this action on May 24, 2021, alleging gender and sexual orientation discrimination and retaliation in violation of Title VII, and gender and sexual orientation discrimination and retaliation in violation of the New York Executive Law.  (Dkt. No. 1; Dkt. No. 16 at ¶¶ 100-121.)  On October 25, 2021, Defendants filed a motion for a change of venue and to dismiss Weiss's claims against Defendant AT&T.  (Dkt. No. 24.)

**II.**     **Legal Standard**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  To determine whether transfer is appropriate, a district court asks "whether the action could have been brought originally in the transferee forum."  *Siegel v. Ford*, No. 16 Civ. 8077, 2017 WL 4119654, at *7 (S.D.N.Y. Sept. 15, 2017).  It then considers "whether transfer would be an appropriate exercise of the Court's discretion."  *Robertson v. Cartinhour*, No. 10 Civ. 8442, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).  A district court has "broad discretion" to decide whether to transfer an action to another district.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).  Where a case involves consideration of venue and of failure to state a claim, logic "compels considering jurisdiction and venue questions first."  *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963).

### III. Motion to Transfer

Defendants move for a change of venue and to transfer this action to the Western District of New York.

Under 28 U.S.C. § 1391(b), venue is proper in a district "in which any defendant resides, if all defendants are residents of the State in which the district is located" or "in which a substantial part of the events or omissions giving rise to the claim occurred." Here, it is undisputable that the action could have been brought originally in the Western District of New York. Weiss bases her claim on conduct that primarily occurred within the Western District of New York. (*See* Compl., *passim*.) Weiss also resides in Rochester, which is in the Western District of New York, and Defendant Premier Technologies transacts business in the Western District of New York, e.g., at the stores in which Plaintiff worked. (*See* Compl. ¶¶ 2, 4.)

To determine whether transfer is appropriate, the Court balances nine factors: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *SEC v. Hill Int'l, Inc.*, No. 20 Civ. 447, 2020 WL 2029591, at *3 (S.D.N.Y. Apr. 28, 2020) (internal quotation marks omitted). Those factors counsel in favor of transfer here.

#### A. Factors Favoring Transfer

##### 1. Locus of Operative Facts

The locus of operative facts is a "primary factor in determining a § 1404(a) motion to transfer" that "substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *Hill Int'l*, 2020 WL 2029591,

4

at *4 (internal citation and quotation marks omitted). "To determine the locus of operative facts, a court must look to the site of the event from which the claim arises." *AVEMCO Ins. Co. v. GSF Holding Corp.*, No. 96 Civ. 8323, 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (internal citation and quotation marks omitted).

Based on the Plaintiff's own recitation of facts contained in the Amended Complaint, the central facts giving rise to her claim occurred at Defendant Premier's stores located in Victor and Batavia, New York, both located within the Western District of New York. (*See Compl.* ¶ 4.) Weiss recites a series of Sturdy's allegedly discriminatory actions during her tenure at the two stores, including his behavior toward her, failure to train her, exclusion of her from meetings, interference with her sales, and denial of opportunities to earn commissions. (*See, e.g.*, *Compl.* ¶¶ 28-30, 37, 64-70, 72-75.) Weiss also alleges that she reported Sturdy's behavior to Premier, which failed to remedy it and instead ultimately let her go before offering to connect her to a job in "hair and makeup." (*See, e.g.*, *Compl.* ¶ 80, 97.) These allegedly discriminatory actions all occurred in the Western District of New York, and none of the relevant actions are alleged to have occurred within the Southern District of New York. Accordingly, this factor weighs strongly in favor of transfer.

      **2.**      **Convenience and Availability of the Witnesses**

"The convenience of witnesses is often one of the most important considerations in deciding a motion to transfer." *Sec. & Exch. Comm'n v. Am. Renal Assoc. Holdings*, No. 21-CV-10366 (JPO), 2022 WL 1166087, at *3 (S.D.N.Y. Apr. 20, 2022). This factor too favors transfer to the Western District of New York. Weiss's Complaint identifies several persons who may be witnesses in this litigation, including Mary Weiler, Jeffrey Carpenter, Paul Draper, Courtney Sturdy, and Robin Cortese. Weiss interacted with these individuals at Premier's stores in either Victor or Batavia, New York, and these individuals work or worked at Premier's locations in

Victoria, Batavia, or Manlius, New York.  (Dkt. 25 ¶ 13.)  Weiss does not allege that any of these individuals live or work in the Southern District of New York.  The most centrally involved potential witness—namely, Courtney Sturdy—is alleged to have worked in the Western District.  In her opposition briefing, Weiss also provides an affidavit from a Ms. Mary McCormack, who resides in Ontario County, New York, which is also in the Western District.  (Dkt. 28 ¶ 1.)

As a last-ditch effort to remain in the Southern District of New York, Weiss offers to stipulate that all depositions of witnesses be taken remotely.  It is true that, particularly in light of the COVID-19 pandemic, remote depositions have become more common.  *See Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020) ("Conducting depositions remotely is becoming the 'new normal.'").  And courts have sometimes considered the availability of remote proceedings when weighing transfer of venue.  *See, e.g.*, *In re Certa Dose, Inc.*, No. 21-11045, 2021 WL 5177376, at *18 (Bankr. S.D.N.Y. Nov. 4, 2021) (declining transfer because though some potential witnesses resided in Colorado, litigation was uncertain and, in any case, likely to proceed remotely).

Ultimately, however, this offer fails to persuade.  During the pandemic, courts favored remote depositions to "accomplish the just, speedy, and inexpensive determination" of cases when they would otherwise indefinitely stall.  471 F. Supp. 3d at 576.  That is a far cry from offering remote depositions as a ploy to defeat the typical considerations of venue—particularly where, as here, none of the operative facts occurred in the district in which this Court sits.  Plaintiff's offer is also premature and one-sided; this Court declines at this stage and based on only one party to decide whether the depositions will be remote or in person.  Accordingly, Weiss's offer of remote depositions does not factor substantially into this Court's analysis.

Nor is convenience the end of the inquiry as to witnesses. Courts must also consider the availability of process to compel the attendance of unwilling witnesses. Defendants note that two of the identified witnesses, Ms. Weiler and Mr. Draper, are no longer employed by Premier and thus Premier cannot guarantee their cooperation. Defendants, however, do not specify where these potential witnesses now live, and thus which court may have subpoena power under Fed. R. Civ. P. 45(c)(3)(A)(ii). Accordingly, the Court affords only slight weight to this factor.

### 3. Convenience of the Parties

The convenience of the parties also weighs in favor of transfer. Defendant Premier has several stores within the Western District of New York, and Manlius, where it is headquartered, is much closer to the Western District of New York than the Southern District. Weiss also lives in the Western District; her complaint identifies her residence as Rochester, New York, where the Western District has offices. (Compl. ¶¶ 2, 4.)

Weiss states in opposition that she has ties to this district despite her current place of residence, namely, that she is a "former and likely future resident of this district, and a regular visitor to this district" who "chose this district with her personal connections to this district in mind." (Dkt. No. 30 at 1.) Leaving aside the speculative nature of these assertions, these facts suggest only that the Southern District may not be as inconvenient to the Plaintiff as it originally appears—not that moving this action to the Western District would pose a burden for the Plaintiff.

### 4. The Location of Relevant Documents

Courts also consider the location of relevant documents and the relative ease of access to various sources of proof. This too weighs in favor of transfer. If relevant documents are kept in the stores where Weiss worked and allegedly endured discrimination, then those documents are

7

in the Western District of New York. If they are at Premier's corporate headquarters, then they are in Manlius, which again, is much closer to the Western than the Southern District.

### B.     Factors Weighing Against Transfer

#### 1.     The Plaintiff's Choice of Forum

The sole factor weighing against transfer is Weiss's choice of this forum. "It is well settled that the plaintiff's choice of forum is given great weight." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012). This choice "will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998). Importantly, though, the plaintiff's choice of venue is given less deference where (1) the operative facts have little connection to the chosen district or (2) the plaintiff's residence is not the chosen forum. *See Easy Web*, 888 F. Supp. 2d at 348–49.

Here, the reason behind Weiss's choice of the Southern District of New York is unclear. Most of the operative facts occurred in the Western District (and none in the Southern District) and the Plaintiff resides in the Western District. Additionally, venue is proper as to the Defendants in the Western District, the key documents are either within the Western or the Northern District, and the key witnesses live or work within the Western District. Indeed, this case's link to the Southern District is so tenuous that, if AT&T were dismissed from this action, it appears likely that the Court would have to dismiss this action entire for improper venue.

### C.     Neutral Factors

The remaining factors are neutral and do not affect the transfer analysis. First, neither party has made representations about their relative means. Second, this Court is confident that the Western District is equally familiar as this Court with Title VII and the New York Executive Law § 296. Finally, this case is in the early stages of litigation and neither trial efficiency nor the

interests of justice will be impacted by a transfer. On balance, the factors counsel in favor of transfer. Accordingly, Defendants' motion to transfer is granted.

## IV. Motion to Dismiss the Complaint Against Defendant AT&T

Defendants also move to dismiss the claims against Defendant AT&T under Federal Rule of Civil Procedure 12(b)(6). Because this Court has concluded that this action should be transferred to the Western District of New York, the motion to dismiss for failure to state a claim is denied without prejudice to renewal in the Western District of New York.

## V. Conclusion

For the foregoing reasons, Defendant's motion transfer venue is GRANTED. Defendant's motion to dismiss the Complaint against Defendant AT&T is denied without prejudice.

The Clerk of Court is directed to close the motion at Docket Number 24 and transfer this case to the United States District Court for the Western District of New York.

SO ORDERED.

Dated: August 12, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge