UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VANESSA WEISS,

                                      Plaintiff,                              DECISION AND ORDER

                                                                              22-CV-6349DGL

                          v.

PREMIER TECHNOLOGIES and
AT&T CORPORATION,

                                      Defendants.
_____

## INTRODUCTION

Plaintiff Vanessa Weiss ("plaintiff") brings this action alleging that defendants Premier Technologies ("Premier") and AT&T Corporation ("AT&T"), discriminated and retaliated against her with respect to her employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §290 et seq., on the basis of her gender and/or sexual orientation. (Amended Complaint, Dkt. #16).

Familiarity with the relevant facts, as alleged in the Amended Complaint and summarized here, is presumed. Beginning on or around July 27, 2019, plaintiff, a transgender woman, was employed as a Sales Representative with defendant Premier, an official retailer for defendant AT&T. She was initially assigned to Premier's Batavia store under supervisor Courtney Sturdy ("Sturdy") for training, with the expectation that both of them would later move to Premier's Victor, NY location permanently. Plaintiff claims that soon after she started her job, it became clear that Sturdy was uncomfortable with her: he ignored and avoided her, and did not provide her with any training or instruction.

In or about August 2019, plaintiff was informed that Sturdy was holding meetings with her male coworkers to inform them about new promotions and products, from which she was excluded. As such, plaintiff's ability to generate sales was compromised.

Shortly thereafter, plaintiff used an inter-office messenger chat tool to lodge a complaint of discrimination with Premier Human Resources Associate Mary Weiler ("Weiler"), explaining that Sturdy was showing his male employees new promotions and products, but withholding such information from plaintiff, and that she believed Sturdy was discriminating against her because she was a transgender woman. Weiler abruptly ended the chat, saying, "I don't know who is monitoring this chat," and told plaintiff she would call her on her personal phone to discuss the matter. Weiler did so, and assured plaintiff that she would bring the matter to the attention of Regional Manager Jeff Carpenter ("Carpenter"), so that Carpenter could speak to Sturdy about it. Plaintiff asked if she could be transferred to a different store in order to be away from Sturdy, a request which Weiler said she would "keep . . . in mind."

Three days later, Weiler e-mailed plaintiff and stated that she had spoken with Carpenter, who had spoken to Sturdy, and that everything should be "ok." However, later the same month, when plaintiff rode in a car with Sturdy as part of a training excursion on community outreach, Sturdy commented to plaintiff that "someone" in the store had "complained" about him, but that "whatever," he would just "deal" with it, and looked at plaintiff angrily. Plaintiff took this interaction to mean that Sturdy was aware that she was the person had made the discrimination complaint, and that he was irate about it.

On or about September 10, 2019, plaintiff and Sturdy were both moved to the Victor, NY store. While there, plaintiff's performance was praised by AT&T. An AT&T regional manager and Client Services Executive named Abby visited the store every two weeks to review paperwork,

assess compliance with AT&T standards, and meet with sales associates to discuss and monitor performance. Abby commended plaintiff's sales efforts, and noted that plaintiff's name appeared more frequently in the sales log than anyone else's. AT&T Client Business Solutions Executive Patty Murdough, who worked with Premier sales associates to write and revise sales call and negotiation scripts, applauded plaintiff's sales calls, telling other employees that plaintiff was "great to work with," and seemed to be "doing more work in the store" than anyone else.

Nonetheless, plaintiff contends that Sturdy continued to treat her with a level of disrespect not shown to any other employees, including micromanaging her work, interrupting her, disparaging her in front of customers, physically separating her from customers, and belittling her for making sales calls. On one occasion, a customer was reportedly so appalled by Sturdy's abusive behavior that she left the store, only to call and speak directly to plaintiff later, explaining that she would not be returning because of her disgust over Sturdy's treatment of plaintiff.

When plaintiff underwent training to sell "First Net" accounts targeted toward first responders and attempted to make sales calls to first responder stations, Sturdy ordered her to stop, insisting that plaintiff could not possibly have learned enough from her training to answer questions about First Net accounts. At the same time, Sturdy permitted male and cisgender employees at the store, who had completed the same training, to sell First Net accounts. Plaintiff also contends that Sturdy refused to schedule plaintiff to work on busy sales days (such as Black Friday), in a transparent attempt to sabotage her performance.

Plaintiff's coworkers reportedly took notice of Sturdy's discriminatory treatment of plaintiff with one coworker remarking, "Boy, [Sturdy] really has it out for you."

On or about December 10, 2019, plaintiff arrived at work to find Premier Vice President Robyn Cortese ("Cortese") at the store. Cortese and Sturdy informed plaintiff that she was being

3

"let go," with Cortese suggesting that tech product service was perhaps "not the best road for [plaintiff] to pursue," and that perhaps plaintiff would be better suited to doing "hair and makeup" as a career. Cortese then offered to pass on plaintiff's resume to a friend who worked at a department store, in case she wanted to look for a makeup counter job there.

On or about September 16, 2020, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued plaintiff a Right to Sue letter on February 24, 2021. This action timely followed.

Defendant AT&T now moves to dismiss plaintiff's claims against it pursuant to Fed. R. 12(b)(6), on the grounds that plaintiff has failed to state a claim, because she has not plausibly alleged that AT&T was her employer. (Dkt. #34). For the reasons set forth below, AT&T's motion is denied.

## DISCUSSION

### I.   Relevant Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Analysis of the instant motion is guided solely by the pleadings and the documents incorporated therein by reference, wherein the truth of plaintiff's allegations is

presumed. *See Savino v. Lloyds TSB Bank*, 499 F. Supp. 2d 306, 2007 U.S. Dist. LEXIS 43284 at *10-*11 (W.D.N.Y. 2007).

At the outset, the Court notes that AT&T has submitted documentary evidence in support of its motion to dismiss, which plaintiff has opposed with documentary evidence and witness affidavits of her own. However, consideration of such extraneous evidence is inappropriate on a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6).[1]

Nor does the Court find that conversion of the motion to one for summary judgment would be appropriate, in light of the complex constellation of factors to be considered in determining the existence of an employment relationship – discussed in greater detail below – and the fact that discovery has yet to begin in this matter. *See Fairchild-Cathey v. Americu Credit Union*, 2023 U.S. Dist. LEXIS 7343 at *20 (N.D.N.Y. 2023)(collecting cases, and noting that "courts in this Circuit routinely decline to convert a motion to dismiss to summary judgment when discovery has yet to begin"). As such, the Court's analysis is confined to the plausible allegations of the Amended Complaint, and to any materials incorporated therein by reference.

## II. Plaintiff's Employer

Plaintiff alleges that the termination of her employment was the result of discrimination. To set forth a prima facie case of employment discrimination, plaintiff must allege: (1) membership in a protected class; (2) qualification for the job in question; (3) an adverse

---

[1] AT&T urges the Court to consider AT&T's Exclusive Regional Dealer Agreement with Premier, which AT&T describes as "analogous to a franchisor/franchisee arrangement" (Dkt. #34-2 at 4). The matter of *Jordet v. Just Energy Solutions, Inc.*, 404 F. Supp. 3d 214, 221 (W.D.N.Y. 2020), relied upon by AT&T for the proposition that consideration of an underlying contract is appropriate on a pre-discovery motion to dismiss, is inapposite, to the extent that *Jordet* concerned breach of contract and consumer protection claims for which the subject contract was an integral part of the claims alleged. Here, in contrast, consideration of AT&T's Dealer Agreement on this motion would require the Court to make factual determinations which are inappropriate in the context of a Rule 12(b)(6) motion. These include whether, and to what extent, the agreement's terms were valid, and whether they were actually enforced during plaintiff's employment, such that the agreement could be relied-upon to accurately describe the functional relationship between Premier and AT&T. Given that there has been no discovery that would permit the Court to engage in such fact-finding, the Court declines to consider the Dealer Agreement at this juncture.

employment action by her employer; and (4) circumstances supporting an inference of discrimination. *See McDonnell Douglas Corp. v . Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

AT&T contends that defendant Premier Technologies was plaintiff's sole employer, and that AT&T never employed plaintiff, and cannot be liable for her claims of unlawful discrimination and retaliation.

"The standard for whether an entity is a joint employer for Title VII and [NYHRL] purposes is 'functional' and requires the Court to 'look at commonality of hiring, firing, discipline, pay insurance, records, and supervision.'" *Gonzalez v. City of New York*, 2015 U.S. Dist. LEXIS 170605 at *7 (E.D.N.Y. 2015). Thus, in assessing whether an entity is a joint employer, the Court considers multiple factors, including: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Salvat v. Constr. Res. Corp.*, 2017 U.S. Dist. LEXIS 201831 at *6 (S.D.N.Y. 2017)(quoting *AT&T v. NLRB*, 67 F.3d 446, 452-52 (2d Cir. 1995)).

The question of joint employment "is fact-intensive and ordinarily not appropriately resolved at the pleading stage." *Salvat*, 2017 U.S. Dist. LEXIS 201831 at *6. "However, simply asserting in a conclusory way than an entity has control over conditions of employment is insufficient; a plaintiff must make factual allegations showing such control." *Gonzalez*, 2015 U.S. Dist. LEXIS 170605 at *7.

Here, plaintiff alleges that AT&T "holds itself out as the operator" of [Premier's] businesses and stores," with AT&T's logo and name prominently displayed on Premier's website,

in its social media accounts, on its store signage, and even on its employees' uniforms. Premier uses the business name, "AT&T Premier Technologies" on its LinkedIn profile and elsewhere online, and its employee email accounts use the domain "att-premium.com." (Dkt. #16 at ¶7). In fact, plaintiff alleges that a number of Premier's stores display *only* the AT&T name on their exterior, with no reference to Premier or any other company. (Dkt. #16 at ¶8). Plaintiff also alleges that when Premier advertises open positions, both the titles and locations reference AT&T alone, such as "AT&T Sales Consultant," with a work location at "AT&T Elmira Showroom," etc., and explicitly seek applicants to "join a dynamic AT&T wireless company." (Dkt. #16 at ¶9).

Plaintiff also avers that Premier's business operations and employees are directly supervised by AT&T, and that an AT&T regional manager visited plaintiff's workplace every two weeks to review paperwork and sales logs, assess the store's compliance with AT&T standards, and to train, monitor, and discuss the performance of individual sales staff members. (Dkt. #16 at ¶¶11, 62). When sales staff had a lead on a particularly important client or contract, they would work with an AT&T business service manager, who would sometimes take over and negotiate with the business lead directly. AT&T business service managers worked with sales staff to write sales call and negotiation scripts, review and modify sales protocols, and provide in-person sales call training and feedback. (Dkt. #16 at ¶63).

Assuming the truth of plaintiff's plausible allegations and granting plaintiff every favorable inference, I find that plaintiff has managed to aver sufficient employee discipline, supervision, and control by AT&T, to plausibly allege that AT&T was her joint employer. *See e.g.*, *Salvat*, 2017 U.S. Dist. LEXIS 201831 at *6-*7 (allegations that entity supervised and monitored employee performance, was involved in meetings with employees' direct supervisors, and set workplace standards, "adequately, albeit barely" allege that it was a joint employer). AT&T's arguments to

the contrary comprise "a premature attempt to dispute the factual allegations in the Amended Complaint." *Id.*, 2017 U.S. Dist. LEXIS 201831 at *8.

I have considered the remainder of AT&T's claims, and find them to be without merit. Accordingly, AT&T's motion to dismiss all of plaintiff's claims against it, made on the sole basis that plaintiff has failed to plausibly allege that AT&T was her employer, is denied.[2]

## **CONCLUSION**

For the foregoing reasons, I find that plaintiff has sufficiently alleged that defendant AT&T was her joint employer, for purposes of her instant claims. AT&T's motion to dismiss plaintiff's claims against it (Dkt. #34) is denied in its entirety, without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
May 9, 2023.

---

[2] Plaintiff's opposition papers also suggest that if she has not sufficiently alleged a joint employer relationship between AT&T and Premier, then in the alternative, she has alleged a single integrated employer relationship, which requires plaintiff to plead and prove: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial support. *See Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016); *Goldman v. Sol Goldman Invs., LLC*, 559 F. Supp. 3d 238, 243 (S.D.N.Y. 2021). At this juncture, the Court is not convinced that the factual allegations of plaintiff's Amended Complaint, which relate primarily to Premier's use of AT&T's name and logo to identify its own business and describe job openings, address any of these matters in sufficient detail to plausibly allege a single integrated employer relationship.